Anthony P. Savarese, S.
Gaspar Bonanno executed Ms will on January 16, 1946, and by which he left his entire estate to Ms then wife and, in the event of her prior death which happened, to Ms two sons, Frank and Anthony. On July 5, 1947, he married Caterina Leo, then a widow, and hereinafter referred to as Caterina. He died on August 29, 1953, and was survived by his widow and Ms afore-named sons. Since he did not change his will, Ms widow, after probate thereof, filed a notice of election, the validity of which has not been disputed. The executor, his son Frank, has filed his account and to which objections have been interposed by the widow.
One of the objections is directed to two conveyances made by the testator to his two sons of premises No. 1712 Harmon Street, Queens County, and 1361 Greene Avenue, Kings County. Both deeds were dated April 21, 1947 and were duly recorded witMn a few days thereafter. His son Anthony did not attain Ms majority until approximately four months later. Under the deeds testator reserved a life estate in both parcels. The widow claims that the transfers were illusory and in fraud of her rights as a surviving spouse.
Upon the trial Frances Willan, an employee of a partnership conducted by the testator and his two sons under the name of G. Bonanno & Sons, testified that beginning around September, 1946, testator told her on five or six occasions that he wanted to get married. She told him that she knew a lady, a relative of her neighbor, and he told her that she could tell the lady that “ if I like her and we get married, she would not have to worry, she would not have to work, she will be taken care of and we will go away on vacation to Florida * * * that he had the business and he had the property on Greene Avenue and 1712 Harmon Street, the house that he lived in.” The witness said she told Caterina what testator said, and that around the latter part of January or the early part of February, 1947, she introduced her to the testator. Thereafter Caterina came to testator’s factory and he told her in the presence of the witness: “ I think everything is going to work out. "We are going to get married. You won’t have to worry. We will go away on vacations. I got property. You will never have to worry about anything again.” The brother of the objector gave testimony that testator and his sister came to his home in the middle of April, 1947. According to the witness testator told him he was able to take care of his sister, that he did not want her to work, that he had property, the house belongs to him and that he had another house on Greene Avenue, that the shop belongs to him, that he had some money put aside, *890 that when, he got married he would only have the sister of the witness and his two sons to take care of, and “ Whatever, in case anything happens, it is between the three.” The testimony shows that the objector relied on the statements of her prospective husband, that she had no knowledge of the conveyances prior to his death, that his son Frank was active in procuring the transfers and knew that, if his father married, objector would not have any interest in the property upon its transfer to him and his brother. Both transfers were reported by the testator in a gift tax return made by him for the year 1947, and which set forth the dates of the gifts as April 21, 1947, and their total value as $26,456.07. Since his estate, consisting solely of personal property, appears from the account to have a value of $21,317.22, it is evident that testator transferred a principal part of his property by the deeds under attack.
In Newman v. Dore (275 N. Y. 371), the court per Lehman, J., at page 379, said: “ Since the law gives the wife only an expectant interest in the property of her husband which becomes part of his estate, and since the law does not restrict transfers of property by the husband during his life, it would seem that the only sound test of the validity of a challenged transfer is whether it is real or illusory. * * * The test has been formulated in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer. ‘ The good faith required of the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property. It is, therefore, apparent, that the fraudulent intent which will defeat the gift inter vivos cannot be predicated of the husband’s intent to deprive the wife of her distributive share as widow. ” ’ A married person has the right to make any disposition of his property he chooses even though he is motivated by a purpose to destroy an estate to which the survivor of the marriage might make claim under statute law. A purpose to defeat such a right by divestiture of the estate is not treated as a fraud invalidating the transfer. . (Gillette v. Madden, 280 App. Div. 161; Radecki v. Radecki, 279 App. Div. 1137.) Here the testator made outright conveyances of his fee interests subject to a life estate in himself. There was no power of revocation in either instrument. The transactions in each instance were real and the testator divested himself of a substantial interest in each parcel. (Krause v. Krause, 285 N. Y. 27.) His collections of the rents of the premises, paying taxes, *891 insurance premiums and the cost of repairs were consistent with his rights and obligations as a life tenant of the property. Objection 1 of the objections, dated April 11, 1956, is overruled. Objection 8 of the objections, dated April 17,1956, directed to the noninclusion of the rents of both parcels is also overruled.
The account lists a mortgage of $9,000 on premises 84 Third Street, Garden City Park, Long Island, and an item of interest thereon of $750 for the period between the death of decedent and September 30, 1955. Objection is taken to the failure of the executor to account for interest on the mortgage for a period of six years prior to September 30, 1955. The evidence shows that Frank Bonanno purchased the afore-described premises as a home for about $28,500, and took title thereto in November, 1947. Prior thereto his father advanced to him the sum of $9,000. As security for the indebtedness his son and his wife executed and delivered to him a mortgage covering the afore-mentioned premises under date of December 29, 1947, and which was recorded on February 2, 1948. The mortgage recited that it was subject to a prior mortgage and provided that interest should be paid at the rate of 4% per annum, payable semi-annually on July and January first until its maturity on January 1, 1968, at which time testator, if alive, would be 78 years old. The objector’s attorney examined the executor as to transactions had with bis father relating to the mortgage. He asked him if he paid interest on the mortgage and he replied “ Most of the times it was waived.” He was asked if he paid his father any money for interest and he said yes but could not recall the number of times and that most of the times he paid in cash. Once he paid him “ a whole six months instalment and then another period” and said that he paid as he could according to his budget, more or less. He further testified that he wanted to make payment but his father said “ Anthony is not paying rent and that will be, I will not take interest from you.” According to the witness he did not pay interest starting “in 1949 — somewhat around — or 1950.” He testified that he paid interest prior to that time and when asked “ Well, did you pay the whole interest in 1948 ”, he replied “ (I)f it is a cash transaction, I do not recall.”
A waiver has been defined to be the intentional relinquishment of a known right. (Clark v. West, 193 N. Y. 349, 360.) It is essentially a matter of intention which must be proved. The assent must however be clearly established, and will not be inferred from doubtful or equivocal acts or language. (Cady v. Bradshaw, 116 N. Y. 188, 191.) Here the testator’s son asserts a verbal waiver of interest and claims that on occasions *892 he paid his father interest and even as late as “ a couple of months ” before his death. His testimony is vague as to the time of the verbal waiver and the payments of interest, how much he paid and for what period. He had the burden of establishing both claims. His testimony is neither convincing nor satisfactory and, when appraised in the light of his interest, is insufficient to establish either the asserted waiver or the payments of interest. Since the objection is limited to the failure of the executor to include interest for a period of six years prior to September 30, 1955, he will be surcharged only with interest from September 30, 1949 to August 29, 1953, the date of decedent’s death, as the account discloses he has included interest from the latter date to September 30, 1955. Interest accruing thereafter should be set forth in a supplemental account. Objection 4 of the objections, dated April 11, 1956, is sustained to the extent indicated.
The remaining objections are disposed of as follows: Objections of November 9, 1955 are marked withdrawn; objections 2, 3, 5 and 7 in the objections of April 11, 1956 are sustained and objection 6 is withdrawn. The account is settled accordingly. Proceed on notice.